IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Carey Antione Williams, | ) | C/A No. 0:11-2057-TMC-PJG |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Kenny Atkinson, *Warden*, | ) | |
| | ) | |
| Respondent. | ) | |

The petitioner, Carey Antione Williams ("Williams"), a self-represented federal prisoner currently housed at FCI-Edgefield of the Federal Bureau of Prisons ("BOP"), filed this habeas corpus action pursuant to 28 U.S.C. § 2241. In his Petition, Williams alleges that he is entitled to additional custody credit. This matter comes before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the respondent's motion to dismiss, or in the alternative, for summary judgment.[1] (ECF No. 16.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised the petitioner of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the respondent's motion. (ECF No. 17.) Williams filed a response in opposition (ECF No. 21) and the respondent filed a reply (ECF No. 23). Having carefully considered the parties' submissions and the record in this case, the court concludes that the respondent's motion should be granted.

---

[1] The respondent states that he is seeking dismissal of this Petition pursuant to Rule 12(b)(1). (ECF No. 16 at 1.) A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) examines whether the complaint fails to state facts upon which jurisdiction can be founded; however, the respondent concedes in his motion that this court has jurisdiction over this matter. (Id. at 2.) Upon review of Williams's Petition, the court finds that it has jurisdiction over this matter; therefore, the court will proceed to address the respondent's argument that he is entitled to summary judgment.



## BACKGROUND

Williams was arrested on March 17, 1999 by the Sheriff's Department of Mecklenburg County, North Carolina for violation of state parole.[2] (Ray Decl. ¶ 5, ECF No. 16-1 at 2.) Williams was detained on this charge until August 20, 1999 when he was released on parole. (Id. ¶ 6, ECF No. 16-1 at 3.) The parties agree that Williams was arrested again on March 21, 2001 by the Sheriff's Department of Mecklenburg County, North Carolina. Williams alleges that he was arrested on this day in anticipation of being named in a federal indictment and for charges that ultimately were the subject of his federal indictment and conviction. (See Compl., ECF No. 1 at 3; Petr.'s Resp. Opp'n Summ. J. at 2, ECF No. 21 at 2.) Contrarily, Ray declares that Williams was arrested for violation of state parole stemming from a conviction on April 6, 1998. (Ray Decl. ¶ 7, ECF No. 16-1 at 3.) On April 6, 2001, the state court sentenced Williams to 19-23 months' imprisonment in connection with his March 21, 2001 arrest. (Id. ¶ 8.)

A superseding indictment was filed in the United States District Court for the Western District of North Carolina on July 11, 2001 charging Williams with conspiracy to possess with intent to distribute, and distribute, cocaine and cocaine base. (Id. ¶ 9.) On August 23, 2001, the United States Marshals Service ("USMS") executed the federal arrest warrant and transferred Williams pursuant to a federal writ of habeas corpus *ad prosequendum* from state custody to appear in the United States District Court for the Western District of North Carolina. (Id. ¶ 10.) On October 15, 2002, the United States District Court for the Western District of North Carolina sentenced Williams to 140 months' imprisonment. (Id. ¶ 11.) Williams was returned to the state authorities on

---

[2] Alan Ray, a Management Analyst at the Designations and Sentence Computation Center with BOP, declared that this parole violation stemmed from a conviction on August 31, 1994. (Ray Decl. ¶ 5, ECF No. 16-1 at 2.)



November 27, 2002 to complete service of his state sentence. (Id. ¶ 12, ECF No. 16-1 at 4.) On January 10, 2003, Williams completed his state sentence and was released to federal custody to begin service of his federal sentence. (Id. ¶ 13.) Thereafter, Williams has remained in federal custody.

BOP calculated Williams's federal sentence as commencing on January 10, 2003—the date that he was released from state authorities into federal custody—with an anticipated release date of February 25, 2014, which includes good time credit. (See Sentence Monitoring Computation Data, ECF No. 16-1 at 21.) BOP has not calculated Williams's sentence to include any prior custody credit.

In his Petition, Williams contends that he is entitled to additional custody credit for the time he spent in custody from March 21, 2001 through January 9, 2003. In support of his position, Williams argues that his arrest on March 21, 2001 stemmed from events which ultimately became the subject of his federal indictment; that he was arrested under his alias, "Ronald Bookman," and therefore the state authorities did not know of the outstanding parole violation warrant at the time of his arrest; and that the detainer filed by BOP caused his state sentence to last longer than it otherwise would have absent the detainer. (See Compl., ECF No. 1 at 3-4.)

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible

evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a petition filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

*PJG*

B.     **Habeas Corpus Generally**

   Habeas corpus proceedings are the proper mechanism for a prisoner to challenge the legality or duration of his custody.  See Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).  The primary means of attacking the validity of a federal conviction and sentence is through a motion pursuant to 28 U.S.C. § 2255, while a petition for habeas corpus under § 2241 is the proper method to challenge the computation or execution of a federal sentence.  See United States v. Little, 392 F.3d 671, 678-79 (4th Cir. 2004); United States v. Miller, 871 F.2d 488, 489-90 (4th Cir. 1989) (distinguishing between attacks on the "computation and execution of the sentence rather than the sentence itself").

   C.     **Williams's Petition**

   BOP has the authority to execute sentences and compute jail time, which includes computing pre-sentence credits and determining the sentence termination date.  United States v. Wilson, 503 U.S. 329, 333-35 (1992).  According to 18 U.S.C. § 3585(a), "A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to . . . the official detention facility at which the sentence is to be served."  Credit for prior custody is specifically addressed by 18 U.S.C. § 3585(b), which provides:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—
> (1) as a result of the offense for which the sentence was imposed; or
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
> that has not been credited against another sentence.

18 U.S.C. § 3585(b).

   As stated above, Williams argues at length that he is entitled to additional credit because his arrest on March 21, 2001 was based on conduct that ultimately became the subject of his federal

*PJG*

indictment and because he was arrested under his alias, "Ronald Bookman," he could not have been arrested for an outstanding parole violation for "Carey Antione Williams." Regardless of whether Williams's state drug charges ultimately became the subject of a federal indictment, Williams does not appear to dispute the respondent's assertion that Williams received credit for all the time he is seeking on his state conviction for the parole violation. The law is clear that permitting a prisoner to receive double credit for time served would violate 18 U.S.C. § 3585(b). See Wilson, 503 U.S. at 333 ("[T]he final clause of § 3585(b) allows a defendant to receive credit only for detention time 'that has not been credited against another sentence.' "); Villanueva v. United States, 346 F.3d 55, 66 n.3 (2d Cir. 2003) (noting that by statute BOP may credit a prisoner's federal for time "*only* if that time was not 'credited against another sentence' ") (emphasis in original) (quoting 18 U.S.C. § 3585(b)); United States v. Kramer, 12 F.3d 130, 132 (8th Cir. 1993) (explaining that "[t]he record shows that [the petitioner] received credit toward his state sentence for that same time period" and holding that BOP "properly decided not to award [the petitioner] credit for the time served, as it would have contravened the proscription in 18 U.S.C. § 3585(b) against double crediting"); Tisdale v. Menifee, 166 F. Supp. 2d 789 (S.D.N.Y. 2001) (stating that "§ 3585(b) precludes [the petitioner] from receiving 'double credit' for [the same] time on both his state and federal sentences").

In opposition to the respondent's motion, Williams also argues that since the state court ordered that his state sentence would run concurrently with any other sentence, he is entitled to additional credit on his federal sentence. Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently. 18 U.S.C. § 3584(a). However, a state court cannot unilaterally impose a concurrent sentence to a federal sentence. United States v. Hayes, 535 F.3d 907, 912 (8th Cir. 2008) (stating that "[t]he state court had no

authority to designate the federal sentence as concurrent to the state sentence" because "the federal sentence would not run so long as the defendant remained in state custody"); United States v. Eccleston, 521 F.3d 1249, 1254 (10th Cir. 2008) (stating that "the determination of whether a defendant's 'federal sentence would run consecutively to his state sentence is a federal matter which cannot be overridden by a state court provision for concurrent sentencing on a subsequently-obtained state conviction'") (quoting Bloomgren v. Belaski, 948 F.2d 688, 691 (10th Cir. 1991)). The federal government cannot be compelled by an agreement between the prisoner and the state authorities to grant a concurrent sentence. Jake v. Herschberger, 173 F.3d 1059, 1065 (7th Cir. 1999); United States v. Miller, 49 F. Supp. 2d 489, 494 (E.D. Va. 1999). Moreover, Williams was sentenced in state court before he was even indicted or arrested on federal charges and, contrary to Williams's argument, there is no indication in the record that the state court relinquished primary custody until after he completed service of his state sentence.

Williams, relying on Davis v. Attorney General, 425 F.2d 238 (5th Cir. 1970), and its progeny, as well as Bloomgren v. Belaski, 948 F.2d 688 (10th Cir. 1991), further argues that he is entitled to federal credit because his state sentence lasted longer than it otherwise would have absent the federal detainer. Williams asserts that he should at least receive credit from the date the federal detainer was lodged—September 6, 2001 until January 19, 2003. As an initial matter, Davis and the other cases Williams relies on were interpreting 18 U.S.C. § 3568, which was the previous custody credit statute that has since been repealed. Unlike § 3585(b)—which applies to Williams—§ 3568 did not explicitly include a prohibition against awarding credit that has been credited against another

sentence.³  Moreover, the court observes that a detainer filed to hold a prisoner to serve a federal term does not change his state custody status.  See Thomas, 962 F.2d at 360.  A detainer notifies the officials at the institution where a prisoner is confined that the prisoner is wanted in another jurisdiction upon release from prison.  Id. at 360-61.

Williams also asserts that he should at least be entitled to credit beginning October 15, 2002, as this was the date that the federal court imposed the sentence and remanded him to the custody of the USMS.  As stated above, multiple terms of imprisonment imposed at different times run consecutively unless the federal court orders that the terms are to run concurrently.  18 U.S.C. § 3584(a).  When a defendant who is in state custody is sentenced in federal court pursuant to a writ of habeas corpus *ad prosequendum*, the inmate's federal sentence generally does not commence until the inmate fully discharges the state sentence and is transferred to federal custody.  Thomas, 962 F.2d at 361 n.3.  The federal judgment makes no modification to Williams's federal sentence outside the general rule of 18 U.S.C. § 3584(a).  Therefore, by the plain terms of the statute, Williams's state and federal terms run consecutively.

---

³ Moreover, even if the holding in Davis was applicable in this case, the United States Court of Appeals for the Fifth Circuit, in applying Davis, has held that in order to receive credit under Davis, it must appear that the time a petitioner was in state custody was not credited toward his state sentence.  Radcliffe v. Clark, 451 F.2d 250, 251 (5th Cir. 1971) (*per curiam*); see also Doss v. United States, 449 F.2d 1274 (8th Cir. 1971) (*per curiam*).  Similarly, the United States Court of Appeals for the Tenth Circuit, applying Bloomgren, has observed that a petitioner must show that he was not serving the time in connection with another sentence while the detainer is present.  See Falan v. Gallegos, 38 Fed. Appx. 549 (10th Cir. 2002).  In this case, it is not disputed that Williams received credit for this time toward his state sentence; therefore, Davis and Bloomgren, even if applicable, would not avail Williams.



Thus, based on all of the foregoing and contrary to Williams's belief, he is not entitled to any credit against his federal sentence for the time he spent in state custody. Accordingly, Williams has not established that he is entitled to habeas relief.

**RECOMMENDATION**

For the reasons stated above, the court recommends that the respondent's motion (ECF No. 16) be granted and Williams's Petition be denied.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

May 9, 2012
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).